# EXHIBIT A

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM    INDEX NO. 806920/2026

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 04/06/2026

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ERIE

RAMERE MCILWAIN
14 Hardy Court
Tonawanda, New York 14150

            Plaintiff,

vs.

ERIE COUNTY
1100 City Hall
Buffalo, New York 14202

SHERIFF JOHN C. GARCIA, in his official capacity
as Sheriff of Erie County, and individually,
10 Delaware Avenue
Buffalo, New York 14202

SERGEANT ADAM DREW
10 Delaware Avenue
Buffalo, New York 14202

SERGEANT MICHAEL STOCKMAN
10 Delaware Avenue
Buffalo, New York 14202

DEPUTY JOSHUA ALBANEH
10 Delaware Avenue
Buffalo, New York 14202

JOHN and JANE DOES 1-10,
being presently unidentified correction,
classification, housing, records, and/or
supervisory personnel,

            Defendants.

**SUMMONS**

Index No.

Plaintiff designates Erie
County as place of trial

The basis of venue is plaintiff's
residence in Tonawanda, New York

> This paper received at the
> Erie County Attorney's Office
> from _John Maccarnick_ on
> the _15th_ day of _April_, 20_36_
> at _9:09_ (a.m.)/p.m.
>
> Assistant County Attorney

**TO THE ABOVE-NAMED DEFENDANTS:**

    **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this Summons, to serve a notice of appearance, on the Plaintiff's Attorneys within TWENTY (20) DAYS after the service of this Summons, exclusive of the day of service (or within THIRTY (30) DAYS after the service is

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM                    INDEX NO. 806920/2026

NYSCEF DOC. NO. 1                                              RECEIVED NYSCEF: 04/06/2026

complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.


DATED:      Buffalo, New York
            April 6, 2026

                                   **LIPSITZ GREEN SCIME CAMBRIA LLP**

                                   By:_____*/s/ Robert M. Corp*_____
                                   ROBERT M. CORP, ESQ.
                                   Attorneys for Plaintiff
                                   42 Delaware Avenue, Suite 120
                                   Buffalo, New York 14202-3924
                                   (716) 849-1333

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM          INDEX NO. 806920/2026

NYSCEF DOC. NO. 2                                            RECEIVED NYSCEF: 04/06/2026

STATE OF NEW YORK
SUPREME COURT:  COUNTY OF ERIE

---

RAMERE MCILWAIN,

                    Plaintiff,

vs.

ERIE COUNTY,
SHERIFF JOHN C. GARCIA, in his official capacity
as Sheriff of Erie County, and individually,
SERGEANT ADAM DREW,
SERGEANT MICHAEL STOCKMAN,
DEPUTY JOSHUA ALBANEH,
JOHN and JANE DOES 1-10,
being presently unidentified correction,
classification, housing, records, and/or
supervisory personnel,

                    Defendants.

**COMPLAINT**

Index No.

---

Plaintiff, RAMERE MCILWAIN, ("plaintiff") by his attorneys, LIPSITZ GREEN SCIME

CAMBRIA LLP, for his complaint against defendants, alleges:

## PARTIES

1.     Plaintiff, at all times hereinafter mentioned was and still is a resident of the City of

Buffalo located within the County of Erie and the State of New York.

2.     Upon information and belief, Defendant, ERIE COUNTY (the "County"), is a

municipal corporation duly organized and existing under and pursuant to the laws of the State of

New York.

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM          INDEX NO. 806920/2026
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 04/06/2026

3.      Upon information and belief, Erie County is charged by New York law with maintaining the Erie County Holding Center ("ECHC") and with providing a reasonably safe jail facility for persons held there.

4.      Defendant ERIE COUNTY SHERIFF JOHN C. GARCIA ("Garcia") is the Sheriff of Erie County. In his official capacity, he is responsible for policy, classification, housing, keep-away administration, and safety operations at the Erie County Holding Center. Upon information and belief, Garcia was also personally responsible for establishing, approving, implementing, training on, supervising, and disciplining policies and practices governing inmate classification, inmate separation, keep-away directives, housing assignments, inmate movement, and inmate safety at ECHC. Garcia is sued in his official capacity and individually.

5.      Upon information and belief, at all times herein mentioned, Defendant Sergeant Adam Drew, was and still is a resident of the County of Erie and the State of New York.

6.      Upon information and belief, at all times herein mentioned, Defendant Sergeant Michael Stockman, was and still is a resident of the County of Erie and the State of New York.

7.      Upon information and belief, at all times herein mentioned, Defendant Deputy Joshua Albaneh, was and still is a resident of the County of Erie and the State of New York.

8.      Upon information and belief, John/Jane Doe Defendants 1-10 are correction, classification, housing, records, and/or supervisory personnel assigned to ECHC whose names and capacities are presently unknown despite diligent efforts, and who participated in, approved, failed to approve, recorded, failed to record, communicated, failed to communicate, implemented, failed to implement, and/or otherwise contributed to the failure to process, record, communicate, implement, honor, or enforce plaintiff's keep-away directive and/or plaintiff's placement or

-2-

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM
INDEX NO. 806920/2026

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/06/2026

continued presence in Delta Seg High. Plaintiff will amend this Complaint to substitute their true names and capacities when ascertained.

9. Upon information and belief, at all times hereinafter mentioned, Defendant, Sergeant Adam Drew, was employed as a corrections officer by Defendant County and/or the Erie County Sheriff's Office ("ECSO").

10. Upon information and belief, at all times hereinafter mentioned, Defendant, Sergeant Michael Stockman, was employed as a corrections officer by Defendant County and/or ECSO.

11. Upon information and belief, at all times hereinafter mentioned, Defendant, Deputy Joshua Albaneh, was employed as a corrections officer by Defendant County and/or ECSO.

12. Upon information and belief, at all times hereinafter mentioned, Defendants Sergeant Adam Drew, Sergeant Michael Stockman, and Deputy Joshua Albaneh, and John/Jane Doe Defendants 1-10 were deputies, correction officers, employees and/or agents assigned to the Erie County Holding Center, acting under Sheriff Garcia's custody, control, training, supervision, and disciplinary authority, under color of state law, within the scope of their duties, and pursuant to the customs, policies, practices, and procedures of Erie County and/or Garcia.

## **CONDITION PRECEDENT**

13. With respect to plaintiff's state-law claims and to the extent required by law, on or about July 2, 2025, a Notice of Claim was served, in duplicate, upon Erie County, Sheriff John C. Garcia, Sergeant Adam Drew, and Sergeant Michael Stockman within ninety (90) days after the claim arose. The Notice of Claim set forth, among other things, the time when, the place where, and the manner in which the claim arose, the nature of the claims asserted, and the injuries and

-3-

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM        INDEX NO. 806920/2026

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 04/06/2026

damages sustained by plaintiff. More than thirty (30) days have elapsed since service of the Notice of Claim, and defendants have failed and neglected to adjust or pay the claim.

14.     Plaintiff appeared for and completed a hearing pursuant to General Municipal Law § 50-h on March 30, 2026. All conditions precedent to the commencement of this action have been satisfied, excused, or otherwise occurred.

## FACTS

15.     On or about the 7th day of April, 2025 during the evening hours, plaintiff was an inmate at the Erie County Holding Center located at 40 Delaware Avenue in Buffalo, New York.

16.     At all relevant times, plaintiff was a pretrial detainee and/or otherwise not a sentenced prisoner being held at the Erie County Holding Center on pending criminal matters and/or a parole warrant and had not yet been sentenced on the matters for which he was being detained there.

17.     Plaintiff had a personal history and longstanding, preexisting conflict with fellow inmate Emanuel Stokes and with inmates associated with, aligned with, and/or acting on behalf of Stokes from before plaintiff's incarceration.

18.     Before April 7, 2025, defendants had actual and constructive notice that plaintiff faced a substantial and specific risk of inmate-on-inmate violence if he and Emanuel Stokes were not kept separated. Plaintiff personally informed jail staff that he had a longstanding preexisting conflict with Stokes and with inmates associated with, aligned with, and/or acting on behalf of Stokes from before plaintiff's incarceration. Plaintiff further informed jail staff that he and Stokes had been involved in violent altercations before plaintiff's confinement and that their conflict was likely to continue inside the jail unless they were kept apart.

-4-

19.     Upon information and belief, plaintiff was listed as an inmate with active conflict-related cautionaries, including multiple "CHECK KEEP AWAYS" and related safety or separation alerts in the weeks preceding April 7, 2025. Upon information and belief, staff further believed that plaintiff and Stokes were allegedly associated with rival groups and that plaintiff and Stokes had engaged in repeated hostile encounters inside the Holding Center, including screaming at one another, spitting, throwing liquids and/or objects, and other provocations observed by or reported to staff.

20.     Upon information and belief, before April 7, 2025, jail staff believed that plaintiff and Stokes were associated with hostile, rival, and/or antagonistic groups or associates and should be kept apart.

21.     On more than one occasion before April 7, officers acknowledged to plaintiff that they knew plaintiff and Stokes were supposed to be kept away from each other.

22.     After the March 26, 2025 incident involving inmate Marquis Verse, plaintiff specifically requested a keep away/stay away directive as to Emanuel Stokes because of plaintiff's preexisting conflict with Stokes and Stokes's associates and because plaintiff did not want those issues to escalate or lead to further violence. Plaintiff gave that request to Sergeant Adam Drew.

23.     Upon information and belief, Sergeant Michael Stockman was responsible for inmate location management, housing assignments, and/or the implementation of keep away directives. Plaintiff thereafter received written notice that the requested keep away had been granted before plaintiff's placement in Delta Seg High and before the April 7, 2025 assault.

24.     Upon information and belief, one or more presently unidentified correction, classification, housing, records, and/or supervisory personnel were responsible for entering, recording, communicating, approving, implementing, auditing, and/or enforcing the keep-away

-5-

directive and related classification or housing restrictions, and their failures contributed to plaintiff's placement or continued presence in Delta Seg High.

25.     Plaintiff thereafter received written notice that the requested keep away had been granted before plaintiff's placement in Delta Seg High and before the April 7, 2025 assault.

26.     These warnings, directives, cautionaries, repeated hostilities, and the granted keep away made the risk to plaintiff specific, concrete, and reasonably foreseeable before April 7, 2025.

27.     Defendants set in place numerous active "CHECK KEEP AWAYS" cautionaries on March 26, 2025 and March 31, 2025, among other dates, reinforcing that staff were already tracking plaintiff as an inmate with active conflict and separation issues.

28.     Following a later disciplinary issue while inside ECHC, plaintiff was transported to and held in the sally port on Delta Seg High and/or placed in Delta Seg High notwithstanding the granted keep-away directive, where Emanuel Stokes was housed, present, and/or otherwise had ready access to plaintiff, including through inmates acting at his direction or in concert with him, such as Elijah Davis.

29.     Deputy Joshua Albaneh was present when plaintiff was transported to and held in the Delta Seg High sally port, knew or should have known from plaintiff's conflict history, plaintiff's warnings, the facility's cautionary and classification systems, the granted keep away directive, and the ongoing hostilities between plaintiff and Stokes that plaintiff should not have been placed or left there, and nevertheless permitted plaintiff to be placed and remain there.

30.     Approximately thirty to forty-five minutes later, Elijah Davis, acting at the direction of and in concert with Emanuel Stokes, and with Stokes beside him and participating in the attack, jumped plaintiff and cut plaintiff across the face with a razor or shank.

-6-

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM          INDEX NO. 806920/2026

NYSCEF DOC. NO. 2                                           RECEIVED NYSCEF: 04/06/2026

31.    To the extent any on-scene staff, including Albaneh and/or presently unidentified correction personnel, became aware that plaintiff was being assaulted while the assault was still ongoing, those defendants failed to intervene with reasonable promptness to stop the assault and mitigate plaintiff's injuries and damages.

32.    Although jail staff later identified Davis as the inmate physically confronting plaintiff when staff responded, Davis was acting at Stokes's direction and as part of a joint assault engineered by Stokes.

33.    This incident occurred because defendants failed to timely and properly enter, communicate, implement, honor, and enforce the granted Stokes keep away; failed to cross-check plaintiff's cautionary and classification information before housing and movement decisions; failed to separate plaintiff from inmates with known conflicts; failed to manage inmate location and housing appropriately; and failed to take reasonable measures to guarantee plaintiff's safety.

34.    Plaintiff sustained a five-inch gash to the right side of his face from ear to cheek, deeper near the ear, was transported to ECMC for a higher level of care, received multiple sutures, and was thereafter treated for concussion-related symptoms.

35.    Plaintiff also suffered acute psychological harm, anxiety, fear, and ongoing emotional distress as a result of the assault and the circumstances that allowed it to occur.

36.    As a result of defendants' conduct, plaintiff sustained a facial laceration requiring multiple sutures, dizziness and other concussion-related symptoms, pain, scarring, emotional distress, and other physical and psychological injuries.

37.    Upon information and belief, for years before the April 7, 2025 assault on plaintiff, Erie County and Sheriff John C. Garcia had actual and constructive notice that the Erie County Holding Center was plagued by serious and recurring deficiencies in detainee safety, supervision,

-7-

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM    INDEX NO. 806920/2026

NYSCEF DOC. NO. 2                                                                    RECEIVED NYSCEF: 04/06/2026

staffing, training, and operational compliance. Outside agencies and investigations had for years identified ECHC as a facility posing ongoing risks to the health and safety of detainees and staff, and had repeatedly documented constitutionally and legally inadequate conditions inside the jail.

38.     Upon information and belief, that longstanding notice was not confined to medical-care issues alone, but reflected broader systemic failures in jail operations, including inadequate staff training, inadequate supervision, poor institutional practices, and unsafe conditions affecting detainees in County custody. Reports from multiple outside agencies and consultants repeatedly documented poor training and deficient jail operations, and that Erie County and Garcia were on actual and constructive notice of ongoing and recurring constitutional violations within ECHC.

39.     Upon information and belief, despite that notice, Erie County and Garcia failed to implement and enforce adequate systems for inmate classification, inmate separation, keep-away processing, communication of safety restrictions, housing assignment review, and staff supervision sufficient to protect detainees from foreseeable inmate-on-inmate violence. Instead, as alleged herein, defendants maintained customs, practices, and/or deliberate failures that permitted granted keep-away directives to be ignored, poorly communicated, untracked, or not honored in actual housing and movement decisions.

40.     Upon information and belief, plaintiff's assault was a foreseeable result of those longstanding customs, policies, practices, and failures. Despite prior notice of dangerous conditions at ECHC and despite plaintiff's specific known conflict with Emanuel Stokes, the granted keep-away directive, and the roles of Drew, Stockman, and Albaneh in housing, movement, and supervision, defendants failed to protect plaintiff from a known and substantial risk of serious harm.

-8-

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM    INDEX NO. 806920/2026

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 04/06/2026

41.    At all relevant times, Garcia was personally responsible for establishing, approving, implementing, and supervising policies and practices governing inmate classification, keep away processing, housing assignment, segregation placement, inmate movement, and inmate safety at ECHC.

42.    Upon information and belief, before April 7, 2025, Garcia had actual and/or constructive notice, from longstanding outside reports, investigations, internal records, and recurring incidents at ECHC, that staff were not adequately trained, supervised, or monitored with respect to inmate safety, housing decisions, segregation movement, and the communication and enforcement of keep away directives.

43.    Upon information and belief, despite that notice, Garcia failed to implement and enforce adequate training, supervision, and corrective measures sufficient to ensure that granted keep away directives were entered, communicated, cross-checked, honored, and enforced in actual housing and movement decisions.

44.    Upon information and belief, one or more presently unidentified correction, classification, housing, records, and/or supervisory personnel participated in or approved the decision to place or leave plaintiff in Delta Seg High, failed to properly record or communicate the granted keep-away directive, and/or failed to take reasonable steps to separate plaintiff from Stokes and Stokes-aligned inmates.

45.    This action falls within one or more of the exceptions set forth in CPLR § 1602.

## FIRST CAUSE OF ACTION AGAINST DEFENDANTS ERIE COUNTY AND SHERIFF JOHN C. GARCIA, IN HIS OFFICIAL CAPACITY:

(42 U.S.C. § 1983 - Municipal / Official-Capacity Liability (Monell))

-9-

46.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

47.     Plaintiff asserts this claim against Erie County and against Garcia in his official capacity, in the alternative and to the full extent permitted by applicable law, based on their respective roles in maintaining the Erie County Holding Center and in establishing, implementing, enforcing, ratifying, and/or tolerating the policies, customs, practices, and deliberate failures alleged herein. Plaintiff does not seek duplicate recovery on duplicative official-capacity theories.

48.     Defendants Erie County and Garcia, in his official capacity, established, condoned, ratified, enforced, tolerated, and/or were deliberately indifferent to customs, policies, practices, and failures of training, supervision, classification, communication, and jail administration that directly and proximately caused the deprivation of plaintiff's constitutional rights and the injuries and damages described herein.

49.     Upon information and belief, Erie County and Garcia had actual and constructive notice, long before April 7, 2025, that the Erie County Holding Center suffered from recurring deficiencies in detainee safety, supervision, staffing, training, and operational compliance, yet failed to implement adequate measures to prevent foreseeable inmate-on-inmate violence.

50.     Defendants acted with deliberate indifference to the rights of incarcerated persons and with actual and/or constructive knowledge of persistent failures to honor keep away orders, to make safe housing and movement decisions, and to protect detainees from foreseeable inmate-on-inmate violence.

51.     Upon information and belief, Erie County and Garcia also had notice, before April 7, 2025, that plaintiff had repeated conflict-related incidents and numerous active "CHECK

-10-

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM
NYSCEF DOC. NO. 2

INDEX NO. 806920/2026
RECEIVED NYSCEF: 04/06/2026

KEEP AWAYS" cautionaries, yet failed to implement or enforce adequate separation, housing, classification, and movement controls to protect him from a known and substantial risk of serious harm.

52.    These written and unwritten policies, customs, practices, and/or deliberate failures included:

    a.  Failing to implement, maintain, communicate, track, and enforce an effective system for inmate "keep away," "stay away," and "keep separate" directives;

    b.  Failing to process, communicate, implement, and enforce granted inmate requests for "stay away" or "keep away" orders;

    c.  Failing to ensure that granted keep-away restrictions were honored in actual housing, transport, movement, classification, and sally-port placement decisions;

    d.  Failing to train, supervise, and discipline deputies, sergeants, classification staff, and housing staff responsible for inmate safety, inmate movement, housing assignments, and keep-away implementation;

    e.  Failing to have in place, or failing to follow, a policy or procedure to separate inmates with known conflicts or protective orders;

    f.  Failing to maintain adequate procedures to identify, communicate, and act upon known inmate conflicts and foreseeable risks of inmate-on-inmate violence;

    g.  Failing to properly screen, during the booking process, and supervise thereafter, prisoner, inmate, and/or detainees with known conflicts;

    h.  Failing to ensure adequate communication between line deputies, supervisors, classification personnel, and housing/location management personnel regarding granted keep-away restrictions and known inmate conflicts;

-11-

i.   Failing to adequately monitor inmate movements or communications;

j.   Failing to adequately supervise and control inmate placement and movement in high-risk segregation and special housing areas, including Delta Seg High;

k.   Failing to cross-check cautionary, classification, and keep away information before housing and movement decisions were made;

l.   Failing to audit, verify, and/or ensure that granted keep-away directives were actually entered into and conveyed through facility record, classification, and housing systems;

m.  Failing to take reasonable measures to guarantee detainee safety where jail officials knew or should have known that enemies, rivals, or inmates with known conflicts were being placed or left in proximity to one another;

n.   Failing to act promptly to rectify the breach of the "stay away" order;

o.   Failing to ensure timely emergency intervention and response once violent inmate assaults began;

p.   Failing to adopt and enforce adequate safeguards to prevent inmates with known conflicts from accessing one another in day-space, housing, transport, or sally-port settings;

q.   Failing to adequately investigate, respond to, and learn from prior inmate conflict incidents involving plaintiff and other detainees, and failing to use such incidents to inform safe housing and separation decisions;

r.   Failing and omitting to properly train, supervise and discipline staff in inmate safety and crisis protocols;

-12-

s.  Failing to train ECHC deputies and staff regarding the constitutional rights of inmates to be free from assault by other inmates;

t.  Failing to train officers to de-escalate encounters between inmates and/or to intervene; and

u.  Failing to take reasonable measures to guarantee the health and safety of inmates.

53.  At all relevant times, Erie County and Garcia, in his official capacity, acted unreasonably and with deliberate indifference to plaintiff's constitutional rights and to the substantial and foreseeable risk of serious harm described herein. The actions of the defendants were malicious, willful, wanton and reckless.

54.  The need to supervise, train, audit, and discipline personnel responsible for keep-away processing, housing, classification, movement, and inmate safety was so obvious, and the risk of serious inmate-on-inmate violence so substantial and foreseeable, that the failure to do so amounted to deliberate indifference.

55.  Upon information and belief, when Erie County and Garcia knowingly and intentionally failed to separate plaintiff from inmates with whom he had known conflicts, causing him to be cut across the face with a razor or shank, they were acting pursuant to the customs, practices, policies, and/or deliberate failures described herein.

56.  Upon information and belief, Erie County's and Garcia's customs, practices, policies, and/or deliberate failures in processing, communicating, implementing, auditing, and enforcing keep-away directives and safe housing restrictions directly and proximately resulted in plaintiff being cut across the face by inmates with whom he had known conflicts.

-13-

57.    Despite due and repeated notice of plaintiff's specific conflict with Emanuel Stokes and the need to keep them separate, defendants failed to implement oversight, housing controls, or other safeguards designed to ensure that granted keep away directives were honored.

58.    Upon information and belief, the acts and omissions of Drew, Stockman, Albaneh, John/Jane Doe Defendants 1-10, and other ECHC personnel described herein were undertaken pursuant to, caused by, ratified by, and/or were a foreseeable product of those customs, policies, practices, and deliberate failures.

59.    In particular, the failure to honor plaintiff's granted keep-away request, the failure to prevent plaintiff from being placed and left in Delta Seg High despite his known conflict with Emanuel Stokes and his associates, and the failure to protect plaintiff from a foreseeable assault were not isolated mistakes, but rather were consistent with and caused by longstanding deficiencies in how Erie County and Garcia administered inmate safety, classification, separation, and supervision at the Erie County Holding Center.

60.    As a direct and proximate result of the foregoing, plaintiff suffered violations of his constitutional rights and sustained the physical, emotional, and psychological injuries described herein.

61.    Accordingly, plaintiff demands judgment on this cause of action for compensatory damages, costs, and reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988, in an amount to be determined at trial.

**SECOND CAUSE OF ACTION AGAINST DEFENDANT SHERIFF JOHN C. GARCIA, INDIVIDUALLY:**
(42 U.S.C. § 1983 - Fourteenth Amendment Deliberate Indifference / Individual-Capacity Supervisory Liability)

-14-

62. Plaintiff repeats, reiterates and realleges each allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

63. This claim is asserted against Garcia based on his own acts and omissions.

64. At all relevant times, Garcia was personally responsible for establishing, approving, implementing, training on, supervising, and disciplining policies and practices governing inmate classification, inmate separation, keep away directives, housing assignments, segregation placement, inmate movement, and inmate safety at the Erie County Holding Center.

65. Before April 7, 2025, Garcia had actual and/or constructive notice, from longstanding outside reports, investigations, facility records, and recurring safety deficiencies at ECHC, that the Holding Center suffered from serious problems in detainee safety, supervision, staffing, classification, communication, and operational compliance, including deficiencies that created a substantial risk that inmates with known conflicts would be housed, moved, or left in proximity to one another and subjected to inmate-on-inmate violence.

66. Despite that notice, Garcia failed to implement, maintain, train on, supervise, audit, and discipline staff with respect to adequate procedures for entering, communicating, cross-checking, honoring, and enforcing keep away directives and conflict-related housing restrictions, including before inmate placement and movement into segregation and sally-port areas.

67. Garcia's own acts and omissions, undertaken with deliberate indifference to a known or obvious risk of serious harm, and with a failure to act with reasonable care despite knowing or having reason to know of that risk, caused or materially contributed to the unconstitutional failure to protect plaintiff described herein.

-15-

NYSCEF DOC. NO. 2

68.    As a direct and proximate result of Garcia's own conduct, plaintiff suffered the injuries and damages described herein.

69.    Accordingly, plaintiff demands judgment on this cause of action for compensatory damages, punitive damages against Garcia to the extent permitted by law, costs, and reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS SERGEANT ADAM DREW, SERGEANT MICHAEL STOCKMAN, DEPUTY JOSHUA ALBANEH, AND JOHN/JANE DOE DEFENDANTS 1-10:
(43 U.S.C. § 1983 - Fourteenth Amendment Failure to Protect / Deliberate Indifference)

70.    Plaintiff repeats, reiterates and realleges each allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

71.    At all relevant times, plaintiff was a pretrial detainee and had a clearly established right under the Fourteenth Amendment to reasonable protection from violence at the hands of other inmates.

72.    As detailed herein, the conditions within the Erie County Holding Center were sufficiently serious to constitute objective deprivations of Mr. McIlwain's right to due process. The risk described herein was objectively serious, substantial, and unreasonable.

73.    As detailed herein, the conditions within the Erie County Holding Center posed an unreasonable risk of serious damage to Plaintiff's health, as he faced an unreasonable risk of being subjected to assault by an inmate with whom he had a prior conflict and had requested a "stay away" order.

74.    Before April 7, 2025, during his incarceration at the Erie County Holding Center, plaintiff informed jail staff that he had a prior conflict with certain inmates, including Stokes and his associates.

-16-

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM    INDEX NO. 806920/2026

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 04/06/2026

75.    Even though defendants, upon information and belief, were informed of the prior conflict and possibility of assault against plaintiff, defendants failed to take any actions to stop and/or prevent the assault.

76.    Defendants Drew, Stockman, and Albaneh knew, or at minimum had reason to know, that plaintiff faced a substantial, obvious, and foreseeable risk of serious harm from Emanuel Stokes and inmates acting in concert with or on behalf of Stokes, including Elijah Davis.

77.    Defendants Drew, Stockman, Albaneh, and John/Jane Doe Defendants 1-10, through their own individual acts and omissions, knew or should have known that plaintiff faced an excessive risk to his safety if he were placed or left in Delta Seg High despite plaintiff's known conflict with Emanuel Stokes, the granted keep-away directive, the active conflict-related cautionaries, and the ongoing hostilities described herein.

78.    Drew personally received plaintiff's keep-away request as to Stokes and knew of the specific conflict requiring separation.

79.    Stockman was responsible, in whole or in part, for inmate location management, housing assignments, classification implementation, and/or the implementation and communication of keep-away directives, and knew or should have known that plaintiff was not to be placed where Stokes or Stokes-aligned inmates had access to him.

80.    Albaneh was present when plaintiff was transported to and held in the Delta Seg High sally port and knew or should have known, from plaintiff's warnings, plaintiff's conflict history, the facility's cautionary and classification systems, the granted keep-away directive, and the ongoing hostilities between plaintiff and Stokes, that plaintiff should not have been placed or left there.

-17-

81.      Specifically, after the March 26, 2025 incident involving Marquis Verse, plaintiff requested a keep away order from Sergeant Adam Drew as to Emanuel Stokes, and upon information and belief Sergeant Michael Stockman was responsible for inmate location management and the implementation of that housing restriction.

82.      Upon information and belief, John/Jane Doe Defendants 1-10 participated in, approved, failed to approve, recorded, failed to record, communicated, failed to communicate, implemented, failed to implement, and/or otherwise contributed to the failure to process, record, communicate, implement, honor, or enforce plaintiff's keep-away directive and/or plaintiff's placement or continued presence in Delta Seg High.

83.      Plaintiff thereafter received written notice that the keep-away had been granted, but defendants nonetheless moved or allowed plaintiff to be moved to Delta Seg High, where Stokes was housed, present, and/or otherwise had access to plaintiff directly and/or through inmates acting at his direction or in concert with him.

84.      As detailed herein, defendants' failure to communicate, implement, and honor the granted keep away order demonstrated deliberate indifference to a substantial and obvious risk of serious harm to plaintiff.

85.      Despite that knowledge, Drew, Stockman, Albaneh, and John/Jane Doe Defendants 1-10 intentionally and/or recklessly failed to act with reasonable care to abate the risk, including by failing to ensure plaintiff was separated from Stokes and his associates, failing to ensure the granted keep-away directive was recorded, communicated, and honored, failing to prevent plaintiff from remaining in Delta Seg High, and failing to take reasonable steps to protect plaintiff from a foreseeable assault.

-18-

Case 1:26-cv-00822-JLS    Document 1-1    Filed 04/23/26    Page 22 of 29

86.     Each of those defendants intentionally or recklessly failed to act with reasonable care to mitigate the substantial and obvious risk of serious harm to plaintiff, and each thereby acted with deliberate indifference to plaintiff's safety.

87.     As a direct and proximate result of the foregoing, plaintiff sustained the injuries described herein, and each of those defendants acted with deliberate indifference to the extreme potential for and, in each case, foreseeable risk of serious harm that plaintiff faced.

88.     Accordingly, plaintiff demands judgment on this cause of action for compensatory damages, punitive damages against Drew, Stockman, Albaneh, and John/Jane Doe Defendants 1-10 to the extent permitted by law, costs, and reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANTS ERIE COUNTY AND SHERIFF JOHN C. GARCIA:**
(Negligence, Failure to Safeguard, and Negligent Jail Administration)

89.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

90.     Erie County owed plaintiff a duty to maintain the Erie County Holding Center in a reasonably safe condition and to use reasonable care to protect detainees from risks of harm that were reasonably foreseeable, including foreseeable inmate-on-inmate assaults.

91.     Garcia, as Sheriff and official responsible for the custody, safekeeping, training, supervision, classification, and jail administration of persons confined at ECHC, owed plaintiff a duty to use reasonable care to protect him from reasonably foreseeable assault and to properly administer, train, supervise, and discipline jail personnel responsible for housing, classification, separation, movement, and inmate safety.

-19-

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM

NYSCEF DOC. NO. 2

INDEX NO. 806920/2026

RECEIVED NYSCEF: 04/06/2026

92. Plaintiff asserts this state-law claim against Erie County based on the County's own direct duties with respect to the maintenance and safe operation of ECHC, and against Garcia based on his own duties of custody, safekeeping, training, supervision, classification, and jail administration.

93. Defendants Erie County and Garcia were negligent, careless, reckless, and/or otherwise wrongful in, among other things: failing to maintain and administer a reasonably safe system for inmate separation and keep away implementation; failing to process, communicate, implement, and honor plaintiff's granted keep away directive; failing to cross-check cautionary and classification information before housing and movement decisions; failing to manage inmate housing, movement, and segregation placement in a reasonably safe manner; failing to protect plaintiff from a reasonably foreseeable risk of assault; and failing to take reasonable measures to safeguard plaintiff once his conflict with Stokes and Stokes-aligned inmates was known.

94. Erie County and Garcia breached those duties by, among other things, failing to process, communicate, implement, track, honor, and enforce plaintiff's keep-away directive; failing to separate plaintiff from inmates with known conflicts; failing to make safe housing, classification, and movement decisions; failing to maintain adequate procedures for inmate separation and conflict management; failing to properly supervise and administer staff responsible for inmate housing and location management; and failing to take reasonable measures to protect plaintiff from a reasonably foreseeable inmate-on-inmate assault.

95. Defendants were further negligent in failing to timely intervene to stop the ongoing assault and mitigate plaintiff's injuries after staff became aware that plaintiff was being attacked.

-20-

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM
NYSCEF DOC. NO. 2

INDEX NO. 806920/2026
RECEIVED NYSCEF: 04/06/2026

96. Defendants were further negligent in failing to maintain, require, and enforce adequate emergency response and intervention procedures after staff became aware that plaintiff was being attacked, thereby failing to timely stop the ongoing assault and mitigate plaintiff's injuries.

97. As a direct and proximate result of the foregoing negligence, plaintiff sustained the physical, emotional, and psychological injuries described herein and suffered damages in an amount to be determined at trial.

98. Accordingly, plaintiff demands judgment on this cause of action for compensatory damages, costs, and disbursements, together with such other and further relief as this Court deems just and proper.

### FIFTH CAUSE OF ACTION AGAINST DEFENDANTS SERGEANT ADAM DREW, SERGEANT MICHAEL STOCKMAN, DEPUTY JOSHUA ALBANEH, AND JOHN/JANE DOE DEFENDANTS 1-10:
(State-Law Negligence, Failure to Safeguard, and Negligent Failure to Protect)

99. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

100. At all relevant times, Drew, Stockman, Albaneh, and John/Jane Doe Defendants 1-10 owed plaintiff a duty to use reasonable care in carrying out their operational inmate-safety, housing, classification, recordkeeping, communication, and keep-away responsibilities, including: processing, recording, communicating, implementing, honoring, and enforcing granted keep-away directives and active conflict-related cautionaries already in place; cross-checking those directives and cautionaries before housing and movement decisions were made; refraining from placing plaintiff in any location where Stokes or Stokes-aligned inmates had

-21-

Case 1:26-cv-00822-JLS    Document 1-1    Filed 04/23/26    Page 25 of 29

access to him; separating inmates with known conflicts; and taking reasonable steps to protect plaintiff from a reasonably foreseeable inmate-on-inmate assault.

101. This state-law claim is asserted against these defendants based on their own acts.

102. Drew was negligent, careless, reckless, and/or otherwise wrongful in receiving plaintiff's keep-away request and failing to ensure that the granted keep-away was properly entered into facility records, communicated to classification and housing staff, escalated as necessary, confirmed, and honored before plaintiff was moved or held in Delta Seg High.

103. Stockman was negligent, careless, reckless, and/or otherwise wrongful in failing to properly manage inmate location, housing, classification, and keep-away implementation. Stockman was also negligent, careless, reckless, and/or otherwise wrongful in failing to carry out plaintiff's existing housing and keep-away restrictions, in failing to cross-check and honor plaintiff's cautionary and classification information before housing and movement decisions were made, and in allowing or failing to prevent plaintiff from being placed where Stokes or Stokes-aligned inmates had access to him.

104. Albaneh was negligent, careless, reckless, and/or otherwise wrongful in failing to carry out and honor plaintiff's existing keep-away and conflict-related restrictions after plaintiff was transported to and held in Delta Seg High and/or the Delta Seg High sally port, in allowing plaintiff to remain there despite the known conflict and granted keep-away, and in failing to remove plaintiff or otherwise safeguard him from a reasonably foreseeable assault.

105. Upon information and belief, John/Jane Doe Defendants 1-10 were negligent, careless, reckless, and/or otherwise wrongful in participating in, approving, failing to approve, recording, failing to record, communicating, failing to communicate, implementing, failing to implement, honoring, failing to honor, and/or otherwise contributing to the failure to process,

-22-

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM

NYSCEF DOC. NO. 2

INDEX NO. 806920/2026

RECEIVED NYSCEF: 04/06/2026

record, communicate, implement, honor, or enforce plaintiff's granted keep-away directive and conflict-related cautionaries and/or plaintiff's placement or continued presence in Delta Seg High.

106. To the extent any of these defendants became aware that plaintiff was being assaulted while the assault was still ongoing, they were further negligent in failing to timely intervene, summon immediate assistance, separate the combatants, and otherwise take reasonable operational steps to stop the assault and mitigate plaintiff's injuries and damages.

107. The foregoing acts and omissions involved the operational carrying out of existing keep-away directives, conflict-related cautionaries, housing restrictions, record entries, communication duties, and inmate-separation measures already in place, rather than merely the exercise of broad policy discretion.

108. Upon information and belief, once plaintiff's keep-away directive was granted and/or entered into facility records, defendants responsible for classification, housing, recordkeeping, communication, transport, and placement were required to communicate, honor, and enforce that directive and the related cautionaries in making housing and movement decisions concerning plaintiff.

109. As a direct and proximate result of the foregoing negligence, plaintiff sustained the physical, emotional, and psychological injuries described herein and suffered damages in an amount to be determined at trial.

110. Accordingly, plaintiff demands judgment on this cause of action for compensatory damages, costs, and disbursements, together with such other and further relief as this Court deems just and proper.

-23-

FILED: ERIE COUNTY CLERK 04/06/2026 12:06 PM    INDEX NO. 806920/2026

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 04/06/2026

**WHEREFORE**, plaintiff demands judgment as follows:

a) Compensatory and special damages against all defendants found liable;

b) punitive damages against defendants on plaintiff's federal claims, to the extent permitted by law;

c) attorneys' fees and costs pursuant to 42 U.S.C. § 1988 on plaintiff's federal claims; and

d) such other and further relief as the Court deems just and proper, together with costs and disbursements.

.

DATED:      Buffalo, New York
            April 6, 2026

                            LIPSITZ GREEN SCIME CAMBRIA LLP


                            By:/s/ Robert M. Corp
                            ROBERT M. CORP, ESQ.
                            Attorneys for Plaintiff
                            42 Delaware Avenue, Suite 120
                            Buffalo, New York 14202-3924
                            (716) 849-1333

-24-

STATE OF NEW YORK
SUPREME COURT :  COUNTY OF ERIE

_____

RAMERE MCILWAIN,

                                        Plaintiff,                        Index No. **806920/2026**

v.

ERIE COUNTY,
SHERIFF JOHN C. GARCIA, in his official capacity
as Sheriff of Erie County, and individually,
SERGEANT ADAM DREW,
SERGEANT MICHAEL STOCKMAN,
DEPUTY JOSHUA ALBANEH,
JOHN and JANE DOES 1-10,

                                        Defendants.

_____

### NOTICE OF COMMENCEMENT OF ACTION
### SUBJECT TO MANDATORY ELECTRONIC FILING

PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b)(3) of that Section.

The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties.  Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF.  Failure to do so may result in an inability to receive electronic notice of document filings.

Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment and (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing.  For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at www.nycourts.gov/efile, or contact the NYSCEF Resource Center at 646-386-3033 or efile@courts.state.ny.us.

7587042v1 - 075862.0001

Dated: Buffalo, New York
    April 10, 2026

LIPSITZ GREEN SCIME CAMBRIA LLP


By: *Robert M. Corp*

    ROBERT M. CORP, ESQ.
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
(716) 849-1333 ext. 314
(716) 855-1580
rcorp@lglaw.com

TO:


ERIE COUNTY
1100 City Hall
Buffalo, New York 14202

SHERIFF JOHN C. GARCIA, in his official capacity
as Sheriff of Erie County, and individually
10 Delaware Avenue
Buffalo, New York 14202

SERGEANT ADAM DREW
10 Delaware Avenue
Buffalo, New York 14202

SERGEANT MICHAEL STOCKMAN
10 Delaware Avenue
Buffalo, New York 14202

DEPUTY JOSHUA ALBANEH
10 Delaware Avenue
Buffalo, New York 14202

JOHN and JANE DOES 1-10,
being presently unidentified correction,
classification, housing, records, and/or
supervisory personnel,

7587042v1 - 075862.0001